for oral argument. We'll get to that in just a second. Counsel, I would like you to assume that we have read all of the briefing that you've submitted in connection with this case and tailor your remarks accordingly. We're familiar with the arguments that you've made in writing and the relevant case law. Secondly, if you've not argued here before, we have this lighting system here on the podium. The green light will go on when you begin. You'll be able to see the time. Don't be distracted by it while you're arguing, but you'll be able to see the time. Yellow light will come on to indicate that you have two minutes remaining. When the red light comes on, go ahead and complete your sentence, and unless you're answering a question from one of the panel members, go ahead and conclude and be seated. We'll go ahead and start with, as I say, the only case on the docket on the oral argument document today, Hughes v. Garcia. This is docket number 22-20621. And, Mr. Hughes, you're going to argue on behalf of the defendants, Garcia and Few. Is that correct? Correct. Okay. All right. You may come forward, Mr. Hughes, not to be confused with the Mr. Hughes who's the plaintiff in the case, so we'll make that distinction. Yeah, please, the court. My name is Kraft Hughes, and like you said, I represent Officers Garcia and Few in this matter on appeal. As this court has acknowledged in the past, the plaintiffs must allege facts that support the elements of the cause of action in order to make a valid claim. In this case, that just simply didn't happen. The appellee in this case, Mr. Hughes, has failed to state a claim, has failed to allege the facts that support the case. As you know, we, the officers in this case, raise the defense of qualified immunity, and it's the appellee's burden to find a case, a case, in his favor to support his claim. Here, in this case, the plaintiff appellee, Mr. Hughes, has not found a single case in his favor. Well, I don't think there's much doubt on the facts that bad faith could be supported here. I mean, by virtue of the omissions that he made, that your clients made. I mean, they didn't, he certainly didn't tell the entire story. I would agree with you on that, but I think what happened was the initial phone call in this case was a call reporting an alleged DWI. But when the officers actually showed up at the scene and visually laid eyes on what was happening, their perception at the time was not a DWI. I'm sorry, can we stop there a second? So how many of the field sobriety test factors did the driver fail, of the Sierra? There's six factors, how many did he fail? Six. Okay, and so what possible basis is there for thinking he wasn't drunk? The officers never saw him in a vehicle driving. Who's Jesse? Jesse is the only... Who's Jesse? No, nobody. What flea market is open at 2 a.m. in Houston, Texas? These are all claims that were made by the appellee in this case. I'm sorry, these are facts from your officer's incident reports and your officer's probable cause affidavits. So who is Jesse? So the suspect or the complainant, Gomez, that was in his statement and he was talking about an individual named Jesse. And who is that? You have no clue. I don't know. So let's go with no clue because that's about as good as we're going to get. What flea market is open at 2 a.m. where he could have been with Jesse? I believe Gomez, when he was saying Jesse, was referring to the appellee in this case. Okay, so what evidence do you have that the appellee in this case is named Jesse? Oh, no. Is that a nickname? No evidence. Is it on his driver's license? Just based on what I read, that's the impression I have. What basis would the officers have for thinking that the appellee in this case and the drunk driver of the Sierra had any pre-existing relationship whatsoever? A pre-existing relationship? Yeah. I don't believe they would have any reason to believe that. Because the incident report says they did. The incident report says they were at the flea market. The incident report says they were drinking. The incident report says that Gomez accused Hughes of having an improper relationship with Gomez's wife. These are your officer's statements sworn out under oath in the affidavit. And I'm asking you, what is the basis for believing these facts? And you're telling me there is none. Well, I don't think those were the important facts. Who is Officer A. Walters? That's in your probable cause affidavit that you're here to defend. And I'm asking you, who is Officer A. Walters? Not your client, clearly. What evidence is there that Officer A. Walters was at the crime scene? There's no evidence that he was at the crime scene. So why is he in the probable cause affidavit? I would have to go back and look at what you're referencing. I'll read it to you. Okay, sure. Officer A. Walters, this is from your probable cause affidavit, told Defendant Garcia that Mr. Hughes handed documents to him and that he retrieved them from Mr. Gomez's vehicle. That's a quote from the incident report that you're defending today. So I would like to know, who is Officer A. Walters? Was Mr. Walters saying what was said to him? Because I don't know who- You're affidavit. A. Walters is. Yeah, that's one of the problems that you've got, is there is no other evidence anywhere in this record about who this guy is and why he's in the record. But he apparently wasn't at the scene. You have two officers that you're representing, right? Right. And neither of them is A. Walters. Correct. Does either of them go by that alias? No. Does either of them tell you before this who that person is? Your independent investigation, anything? It's not in any document that we don't have, right? That's correct. So it's just made up? It's not made up. I believe there is an Officer A. Walters, and I believe he was relaying information he was told. And I think that's what the reference was in the record for that. So we've gone through, I'm not counting, six, eight different facts that are either completely made up or omitted or mischaracterized, at the bare minimum. And so my question is, your lead point today is, you don't have a case, they don't have a case. How is this not orders of magnitude worse than the facts of Franks v. Delaware? Have you read Franks recently? Yes, I have, Your Honor. This seems like orders of magnitude worse. Okay, I respectfully disagree with you, okay? I'm asking why. Because that entire statement by Mr. Gomez talking about Jesse and a flea market, that was not the officer's statement. That was not the officer's statement. That was what the officer was putting in his report, saying that was said to him from Gomez, all those crazy things. But that doesn't mean the officer was making false reports or providing false information by relaying a crazy statement made by Mr. Gomez. Obviously, relaying unreliable information, and that's almost, I mean, any reasonable person would know is false or certainly unreliable. Well, I guess if I had to put myself in the officer's position and I had to write a report based on a statement given to me, you have to- You would take the word of a drunk who failed all of the sobriety tests to establish probable cause? Well, that drunk also said that the appellee kneed him in the leg several times and the officer confirmed that visually. This is my question. Is the officer going to credit the kneeing in the back while also crediting all the things? Your words were quote, crazy things and crazy statement. So the only basis that your officers had for arresting a citizen of the city of Houston is quote, crazy things and quote, a crazy statement. No, I disagree. Okay, so what other basis did they have that he was impersonating a police officer? When they arrived on the scene, the appellee had handcuffed, handcuffed. Is that illegal? Is it illegal to have handcuffs as a private citizen? No. Is it illegal to have a citizen's arrest in Texas? It's not, but it is illegal to hold yourself out and tell the person you're a police officer. And what basis did your officers have that Mr. Hughes impersonated a police officer in that way? Based on the appellee's own second amended complaint, actually says it. Show me where. I have it in front of me, so give me a paragraph. Sure. So the appellee told Gomez he was a police officer, and that's at CR 274. The appellee also told Gomez to turn around, put his hands behind his back. The appellee kneed Gomez in the legs to force Gomez to comply. Can you show me, these are quotes from your officer's statements. These aren't anything that Mr. Hughes alleges. I'm looking at page 274, show me exactly where on he says that he told the police officers. He, Hughes, said, I'm a police officer. Can we cite to a paragraph? Paragraph would be great. Second amendment. Sure. Amended complaint. I see quotations here from the probable cause affidavit. Is that what you're referring to? Because those aren't Mr. Hughes's allegations, those are your allegations. No, in, okay, it's in paragraph 85. Okay. Okay, about midway down, and it began, the sentence begins, the omissions and false statements are critical to the finding of probable cause, comma, which relies entirely on the DWI suspect's uncorroborated allegation that Mr. Hughes told the DWI suspect that he was a police officer, as Mr. Hughes was handcuffing him. So the police arrived on the scene, and they took a statement from Gomez. And Gomez said, he told me he was a police officer, he handcuffed me. Mm-hm. And so I believe that evidence alone. A statement from the drunk. That's all you got. That's the only person that was there. And so you told me, just a minute ago, that this was, quote, crazy things and, quote, a crazy statement. And so a statement from a man who failed six out of six of the field sobriety test drunk fact for driving while intoxicated, and says, quote, crazy things, and quote, makes a crazy statement, is the only basis that you have for any of the allegations that you would use in a probable cause affidavit to arrest a citizen of the city of Houston. I'm just making sure I understand the position of the legal department. No, I disagree with the way that you're- I'm trying to understand your position, not mine. Okay, my position is that when the officers arrived on the scene and physically had personal observations with their own eyes about what was happening, they saw the appellee standing next to Gomez with his own handcuffs, handcuffed Gomez. The car was not driving. No one was driving. And the officers never saw a DWI infraction or violation. How many 911 calls were there about the swerving Sierra? Two. And who made the second? We know Hughes made one. Who made the second one? An unknown third party witness. Do we think that that person was lying? No, but I think it's very telling that you brought that up, because on the phone during that 911 recording, that woman, the other witness, said that she was leaving the scene. You know why? Because she was so uncomfortable watching the appellee physically try and pull Gomez out of his parked vehicle. She had to leave the scene. She was so uncomfortable. Okay, so you just told me that there's a second 911 call from someone else who saw Gomez driving the white Sierra. No, who saw the appellee trying to pull Gomez out of his vehicle. Okay, was Gomez driving the white Sierra? Gomez was not driving at the time. It was parked on the right shoulder. Who in your view was driving the white Sierra when it was swerving from side to side down the interstate? Gomez. Okay, so I don't understand. He was driving the car, he fails all the field sobriety tests, and we just let him go? No, the only evidence that Gomez was ever driving is the appellee's statement. No, that's not true, because Gomez tells the officers in Gomez's statement that he was driving the car. His whole story is, I got abandoned and I couldn't just leave my truck and I couldn't go home. So I was driving and I was too drunk and seven beers. That's Gomez's statement. He admits to the officers he was driving. It's a little unclear on his statement. Let me understand the ambiguity. But, I'm sorry, I'm forgetting the question that was on the table. Who was driving the, how in the world can you not arrest a man for DOVI? When you asked me previously who was driving, I thought you meant actually driving at the time. Gomez was the driver of the GMC Sierra, yes. So your point was the officers got there and didn't see him driving, so they're like, well, whatever, he's probably not a problem. We should focus instead on the guy who handcuffed him. Not so much, I mean, I can't speak for their mental thoughts at the time, but their investigation did shift at the moment they arrived on the scene, yes. And they had to call somebody, acknowledging that he was drunk, call somebody to come get him, to take him away, not permitting him to drive. And yet, didn't charge him for anything. Well, these officers are also trained to know what DWI charges and arrest will stick. Okay, and so if they present. I can't speak for them, but if they present a case, a DWI, potential DWI case, with no evidence of anyone ever driving, other than a person's statement, I don't know what the rules or the regulations are, but I. I thought he failed, it was more than that, he failed all the surprise attempts. There's no dash cam video or anything. Counselor, let me ask you, your time's almost up. Do you see any distinction for the Frank's exception purposes between the two officers, between Officer Few and Officer Garcia? Do you see any distinction between what one did versus the other, or you've heretofore argued on behalf of both of them and not commented about one or the other? I do find a distinction, yes, your honor. I think Officer Garcia was the officer who actually signed the- He's the affiant. The affiant, correct. Okay. And Officer Few was present at the scene, but he did not actively participate in preparing the probable cause affidavit. Okay, all right, any further questions? All right, thank you Mr. Hughes, you've reserved for some rebuttal time. We'll hear from Ms. Warren now on behalf of the plaintiff, Mr. Hughes. Good morning, and may it please the court. I'm Courtney Warren, I'm here to represent the appellee, Austin Hughes. And before I get into my argument, I just want to take a moment to reframe the case. I do think it's important to acknowledge that this is an appeal from the denial of a motion to dismiss. These appellants have relied on cases that are mostly summary judgment cases. And even now, getting into the facts, he had said, there's no dash cam footage. I don't need dash cam footage at this stage. I think we have pled, made well pleaded allegations to state a claim and gone well above that. So because the allegations are so detailed, I just want to make sure we're not missing the forest for the trees and remember what actually happened here. Mr. Hughes was simply trying to be a responsible citizen. He was working for Uber, he had passengers in his car, and he saw a drunk driver. I think that all of us in the community would want and expect somebody to call 911 in that situation, and that's exactly what he did. I mean, he overdid it a little bit, I would have to say. So- So I understand what you're saying, but I respectfully disagree because at the time, he had already stopped him and he had already taken his keys. You think the situation's resolved. But then he gets out of his car and starts to walk onto this interstate. We're talking a four lane interstate in Houston at 3 AM. Either he's going to get killed or he's going to have somebody get killed trying to avoid hitting him. There's no way to restrain him from walking onto the interstate. In a, I can't think of a way that is better. Because at some point, he is going to have to physically restrain him. And is it better just to handcuff him and wait there if he has handcuffs in his car, or is it better to try and wrestle him down? I just don't know what one does at that point. And I'd like to point out that part of the problem is how long it took HPD to get there. It was 17 minutes after Mr. Hughes made the phone call that they got there. When you're talking about a DWI, 30 seconds can make a difference. And as I stated in the complaint, their average response time in this is six minutes for their beat. And they took 17 to get there. It doesn't sound like a lot of time, especially here. But when you're holding someone and you're trying to prevent a situation, prevent them from getting killed and you're waiting on officers, it does seem like forever. And so I do feel like he was just trying to contain the situation until police got there. He didn't do, I don't think he did anything above that. But even if he did, HPD and the city of Houston relies on similar conduct and conduct even more similar to arrest to prosecute DWIs all the time. So let's get back to these defendants and the motion that was ruled upon. Tell me about Officer Few and what he did or didn't do that gets you past Franks. Sure. He's not the affiant as I understand it. He is not. Okay. He is the officer that wrote and submitted the incident report. So the incident report that you have to assume was relied on when writing this affidavit, again, was submitted by Officer Few. Officer Few also is the one who interviewed Mr. Hughes. And so he's the only one that got that information from him, whereas Garcia was over there with Gomez. He also was just- Deliberately or recklessly in order to get past, for instance, the language in Melton versus Phillips. If he's not the affiant, and in this case, we can look at the affidavit and see whatever its deficiencies are or inaccuracies or falsehoods. But in this case, he has to, tell me to what extent Few has to act in concert with the affiant in order to be considered the same as the affiant. What's your best case that Officer Few falls in the same bucket? I think, correct me for how I'm saying this, Terwilliger. Terwilliger. Is one of them that does that because all he has to do is participate or submit an attorney affidavit, I think- So you're saying even if it's downstream use, let's say he goes back to the police station after this encounter and he writes up a report and it's got more than one, several inaccuracies in it or things that absolutely didn't happen, but he has no knowledge that there's going to be any downstream use of it to impact an arrest of the complainant, which is what happened in this case, would that not get him qualified immunity? I'm not saying those are the facts in this case. I'm asking, at what point does he fall within this cloak of the exception, Garcia is the affiant. So he may be the most, he's obviously the most identifiable person. We can just look at the affidavit. He signed it. The problem I'm having is getting Officer Few into that zone of liability. Right, so I'll start by saying, and I think you kind of acknowledge, I don't think that's necessary here because Few witnessed it all, right? He was there for all of it. They even arrested him two days later. He knew what was submitted in that probable cause affidavit. And he should have known that there was not enough to arrest him as they were arresting him. He was present for everything. But in a case that you're talking about where they weren't aware that someone was going to use it, I would still argue that they should not be covered by qualified immunity. Because if you are lying in a police incident report, you're expecting that incident report to be used in the case. You're not just writing the incident report to write it. Well, the expectation, I would assume, of the officer who writes the report is that the report's going to be used to prosecute the subject of the complaint. The suspected criminal against whom probable cause exists. Not that we're going to get together and pursue the person who called in the complaint. So on the one hand, maybe they got together in the locker room at the police station and giggled about getting Mr. Hughes framed and hauling him into jail. On the other hand, he may have written the report and said, I'm going to file this report based upon what we saw and he missed a bunch of stuff and then later. I'm trying to get a connection. How have you pled the connection between Officer Few and Garcia signing the affidavit and going to get the arrest warrant? Right. So here I almost think Garcia signing the affidavit is almost a technicality. You have two officers who are acting in concert to investigate this incident. They both are involved in questioning separate people. So he questions Hughes, he questions Gomez. And they have to come together and bring their information together and come to a decision on, we're not going to go after this guy for DWI, instead let's pursue this. And so I think only one person can sign the affidavit. That doesn't mean that Few wasn't participating in the whole situation. And I think that's evident by the report, by his incident report. And what he leaves out of that, what he puts in that, there's certainly enough in both the affidavit and the incident report to tell that they were made at the same time. Was the incident report submitted with the affidavit at the time the warrant was applied for? No. And it was filled out prior to, because it was filled out right after the incident. They did not apply for the warrant until almost 48 hours later. Which again is another reason I think it makes this case more egregious and even more than Terwilliger where they didn't know whether these people were involved or not. They just didn't have information. Here these officers clearly had information that he did not do this. And so I don't know what their motives were for this, but when two days later they go to arrest him, Monday morning, 2 AM when someone has work, they go knocking on his door, he has no idea what's going on. I think, and even in the affidavit, right, they say that they, I will say Garcia said, that he listened to the 9-1-1 call. How do you listen to the 9-1-1 call, hear the people in the background, and listen to the third party? And I did want to bring this up because appellant's counsel had said that the third party didn't see him driving and left the scene because she was so uncomfortable seeing Mr. Hughes pull him out. And that's not what happened and not what we alleged. She calls two minutes after his first phone call and says there's actually a drunk driver right now. We're trying to drive behind him. He's running into the sides and everything. Now he's like stopped on the side of the road. I'm pretty sure he's drunk. Her statement mirrors his. And then she says, he just needs off the road, he's literally swerving. Like, it is almost identical what they say. She does say she wants to leave the scene because she didn't feel comfortable. Is that in the incident report? No, no, that is not, that is not. That is not, and I'll be frank, I didn't allege and I don't have the information that the officers heard that third party call. But they should have. If you're going to wait two days later, there's no exigency. They should be investigating. They should be looking into it. If they listen to his 911 call, you know there's another. In the incident report and affidavit, how are they consistent or inconsistent? I mean, what I'm asking is whether the incident report is so have similarities that would boost your case. Yes, it's a complicated question and I did detail it in here, but there are some things that the incident report contains that the affidavit does not and vice versa. As I mentioned, the affidavit does include a few things that clearly seem fabricated. The fact that they add an allegation that Mr. Gomez said when he was getting arrested, why are you doing this, and Mr. Hughes responded, because I'm a police officer. I just don't think that's believable in any way, but that's not in the incident report, it's not anywhere else. So there are things like that, but then there are also consistencies in both the incident report and the- Does the incident report indicate that the driver of the vehicle failed to satisfy six- It does. It does. And it does include Gomez's statement. Similarly, it includes the same basic facts without the two girls being there and driving the car and without the statement of he's a police officer. But everything else was in there, that his name's Jesse, that he all of a sudden got mad because he was with his wife. Just all of those allegations were in there. And I will say, too, the incident report makes clear that they are, that what they are investigating is Mr. Hughes and not the DWA. And I think that is very telling, too, because I think that shows Hughes' complicity in this. Because if he was just writing what he thought, they went there to investigate a DWI. In your incident report, that's what you should be investigating, a DWI. The fact that he changed it to impersonating a police officer, you're now investigating the person who called 911. To me, that shows that he knew they were going to submit an affidavit relying on that against Mr. Hughes, not against the DWI suspect. Can we go back to something Judge Englehart asked you, which is about the way, so Officer Few was the one who interviewed your client at the gas station across the street or whatever. Is your point that Few omitted key information from what happened at that gas station interview, and that's why he's sort of on the hook for Frank's? Or did I misunderstand what you were saying? Because if I understood what you were saying, then my next question is, what exactly did he omit that he should have included in the incident report? because I take the point that whatever's in the incident report that Hughes said could only come from Few, because Few is the only one who talked to Hughes. So I just want to make sure I'm clear on what you're saying. Yeah, I think that's part of it. I think another part is, in a case like this, where it's kind of he said, he said, even though I think one is clearly more credible, you have to make a credibility determination. You can't make that on your own if you've only interviewed one person and they've only interviewed one person, right? So at some point, Few had to say, I don't believe this guy. He's not credible. As part of the investigation, he had to make the determination along with And I think that in and of itself shows the willingness to deceive the court when they're submitting this affidavit. And I think in this case, I do think it might be a harder case if it's not the same officers that were arresting him. It's not the same, like they're not a team that is working at the same time. And it's not the same people that were investigated the whole time. Here there's only two officers involved in this whole thing. Counsel, if I understood Judge Oldham's question, what did he get wrong? What did your client say that Officer Few got wrong, either by way of a false statement or an omission of something that your client told Officer Few? Yes, so he does say, let me make sure I've got this right. He does say that Mr. Hughes said he was a police officer, which I think is important because he said he was a former police officer is the only thing he ever said. So that's in there. He does include, let me see. I'm sorry, that's okay. I will say too, at a minimum, Few has bystander liability. At a minimum, he saw everything that was going on. I understand that. I'm curious as to the answer to Judge Oldham's question as to what is recorded by Officer Few that is incorrect with regard to your client's statements. Because that's what got sent over for purposes of the affidavit, according to your second amended complaint. Right. Sorry, give me one second. Yeah, I- He told us one. He said he was a former police officer, and Few wrote down that he said he was a police officer. What else? Another big one that they did, and this is how I know that they were acting in conjunction. Because again, he wrote down Gomez's statement as well. But another one of their big things was that Mr. Hughes refused to give them the information for the Uber. And he consistently did try and give it to them, and that was in both the incident report and the affidavit where they said he refused. So I think that's a big one, because it's trying to show he's not cooperative. They did say that, I mean, I think too, just crediting Gomez's statement at all. Part of the thing is, my problem is the omissions in both, right? Because you're not explaining how there are two cars still on the scene. You're not explaining how, where these two girls went, why there were two phone calls, anything like that. And so, if you're going to do an investigation, do an investigation. The fact that they just write, here's what Gomez says, cool, check, we're done. That's what's problematic for me. Try and corroborate it. And so I think that is, it shows participation. And I think the Fifth Circuit has held recently, too, that you just need to participate. You need to either give information. Counsel, can I try to get at it this way? Yeah, go ahead. When was the incident report submitted? What? When was the incident report submitted? Let me tell you. I believe it was the following day. So this whole thing goes down at 3 AM. It's submitted the next day? Mm-hm. Let me tell you. And while we're on this and you're flipping, I take it that we don't have the incident report in our record? I have it. I have it in front of me because I didn't put it in here. But is it in the record? I have your allegations of it, but I don't have the report. I didn't attach the incident report to the complaint. I just quoted it. Yeah, so I would have to take a look. I mean, I do think I did include that in here. I just don't have it at the top of my head. But the order of events is DWI incident, incident report, honor about the next day, and then honor about the next day, arrest. I have it correct? Correct. And I want to make sure I understand your allegations. I'm looking at ROA 265, this is paragraph 56 of the second amendment complaint. And what you allege is that when the incident report is filed, it's not the probable cause evident. But what you said is that in the incident report, it identifies Mr. Hughes as, quote, the suspect.  So, and few did that, is what you've alleged. You say that the report was submitted by few. Correct. And so by that point, they had determined that he was the suspect and that Mr. Garcia was, I'm sorry, Gomez was the complainant. Right. And they do say, he does say in the incident report, one of the things that is different is few in the incident report at least acknowledges that Hughes was someone that called 911, and then they just leave that out totally of the affidavit. But besides that, but they do make clear that the suspect is Hughes and the crime they're investigating is Hughes, despite the fact that they were called out for Gomez and for the DWI. Okay. Okay, counsel. Unless there are any questions from the panel, we appreciate your argument. Thank you. We will hear rebuttal from Mr. Hughes, counsel representing Officer Garcia and Officer Few. You have five minutes. Thank you, Judge. I believe it's really important for us to all realize that the incident report and the probable cause affidavit at issue in this case are not in the record. And we can't see them, and we can't read them. That also means that the court, I don't believe, will be able to conduct a Frank's analysis, because we don't have a probable cause affidavit to compare a proposed corrected affidavit to in the first place. Well, it's just a motion to dismiss, so obviously you can take this up if they're misrepresenting it. Have you read the probable cause affidavit? It's not in the record. I know, but I mean, you represent the city of Houston. Have you read it? No. I mean, obviously if they're misrepresenting it, you can move for sanctions, and you have all kinds of remedies against them. But you'd have no basis, as you sit here today, that they've misrepresented what's in there? No, I wasn't trial, I'm not trial counsel, so no, I haven't read it. Okay. So, I just think it's important, though, it's an important fact and consideration for doing the Frank's analysis to have that. Wouldn't that be something more appropriate for summary judgment, some discovery? Court can look at the probable cause affidavit, see any distinctions, and compare and contrast. It could be, yes. And it just seems to me that all of these questions are more appropriate for summary judgment or trial, one or the other. Instead of just dismissing it, straight away, I'll call it off. Well, in this case, and in a lot of these cases, the courts look at the facts alleged and presume they're true. But in this case, we have nothing to compare the 62 pages of the complaint to, with all the quotes from all these documents, the probable cause affidavit, and the incident report. We are just hoping that she's quoting everything correctly and accurately. And I feel like that's an important- Well, I mean, I suppose you could challenge him if she were not quoting accurately, could you not? Not without seeing the documents. But again, that's a summary judgment exercise. At Rule 12 stage, you're right. All we have is a pleading that makes allegations, some of which may be inaccurate or false, as we will find out through discovery, or maybe through trial, but certainly through discovery. I guess the concern is that, since it's a Rule 12 motion, has she pled the case and cleared the hurdle of the Franks exception? That's how I see the case. Well, I think the type dealing with the independent intermediary doctrine in this case makes it exceptionally more important here. Okay? Because what that requires is for the appellee to bring specific, non-speculative allegations, which they're trying to do through quotes and 62 pages in the complaint, but we don't know the documents they're quoting. Counsel, if you thought it was important, you could have attached it to your answer. Because obviously there's limitations on what you can do on your answer, but when she quotes liberally from a document, she opens herself up to the fact that the defendant in a motion to dismiss can attach it to the answer. We have I don't know how many cases to say that. You could have done it, and you didn't. And you stand here today, and you have no basis for saying that she misrepresented any of the stuff that's in there. I'm just saying that in this appeal, this is where we are, you know, arguing this case. I have nothing further unless you have questions for me. Okay. All right, counsel. Thank you, sir. Thank you both for your briefing and for your argument here today. The case will be considered submitted, and the court will stand in recess until the hearing.